**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| EVERLIGHT ELECTRONICS CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>SEOUL SEMICONDUCTOR CO., LTD.,<br><br>Defendant | ) | **Civil Action No. 2:26-cv-00119**<br><br>**JURY TRIAL DEMANDED** |
| SEOUL SEMICONDUCTOR CO., LTD.,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>EVERLIGHT ELECTRONICS CO., LTD., AND EVERLIGHT OPTOELECTRONICS KOREA CO., LTD.<br><br>Counterclaim-Defendants. | ) | |

**DEFENDANT/COUNTERCLAIM-PLAINTIFF SEOUL SEMICONDUCTOR CO., LTD.'S REPLY IN SUPPORT OF ITS MOTION TO STAY EVERLIGHT ELECTRONICS CO., LTD.'S PATENT INFRINGEMENT CLAIMS PENDING *EX PARTE* REEXAMINATION**

# I. ARGUMENT

## A. Seoul's Independent Counterclaims Do Not Defeat Severance and a Stay

Everlight argues that a stay is not warranted because "no matter what happens in the EPR or with respect to this motion, [Seoul] seeks to have its ten-patent case proceed." (Dkt. 50 at 4.) But the continued litigation of Seoul's counterclaims does not eliminate the efficiencies that would result from staying Everlight's claims. Courts consider "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." The existence of properly pleaded counterclaims is not among those factors, and Everlight cites no case involving a comparable procedural posture. Importantly, Seoul's counterclaims concern different patents, different products, different supply chains, and different infringement theories. Thus, although Everlight asserts that a stay would result in "duplication" of effort, it identifies no overlap between the parties' claims. Everlight instead proposes a blanket rule barring a stay whenever a defendant asserts its own infringement claims, regardless of whether the stay would simplify the litigation.

## B. Everlight's Assessment of the Likely Outcome of the Reexamination is Based on False and Incomplete Information

Everlight asserts that there is no "per se rule that mere institution of an EPR results in a likelihood of simplification." (Dkt. 50 at 5.) Seoul made that very point in its motion (Dkt. 47 at 4), explaining that the "unique facts" of each case provide the proper basis for decision (*id.* at 3). Tellingly, the only case-specific "facts" Everlight offers in opposition are its misleading assertions that the reexamination relies on a single primary reference and that the reference was considered and rejected during initial prosecution and an *inter partes* review. (Dkt. 50 at 5.)

First, Everlight falsely asserts that Terashima was "the primary reference underlying" the reexamination request. (Dkt. 50 at 1.) The request was filed and granted based on two different

primary references: Terashima and Yoshie. (Dkt. 47-2 at 14-22.) The premise of Everlight's argument – that reexamination will fail because the primary reference was considered – is false.

Second, Everlight's description of the original examiner's consideration of Terashima is legally flawed. Japanese Publication 2004-103975A ("Terashima") is one of the many references listed on the cover of the '126 patent. But the only English-language information provided to the examiner was the abstract. (Eisenberg Reply Decl. Ex. 1.) As the Federal Circuit has explained, "while the examiner's initials require that we presume that he or she considered the [ ] reference, this presumption extends only to the examiner's consideration of the brief translated portion[s]." *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1377 (Fed. Cir. 2000). Indeed, the court affirmed a finding of inequitable conduct even though the applicant had submitted the full untranslated reference. *Id.* In reaching that conclusion, the court characterized as "absurd" the "contention that the examiner must have both read and fully understood the entire untranslated [Japanese] reference." *Id.* Under the same reasoning, Everlight is wrong to predict that the reexamination will fail because Terashima was previously "considered" and rejected.

Everlight's analysis of IKEA's failed *inter partes* review (Dkt. 50 at 5-6) is equally flawed. In a tacit concession of the weakness of its argument, Everlight predicts that SSC may argue that the PTAB did not reach the ultimate merits of IKEA's Terashima-based theories. (*Id.*) That is not merely a potential argument; it is precisely what the record shows. *IKEA Supply AG v. Everlight Elecs. Co., Ltd.*, No. IPR2024-00988, 2024 WL 5088892, at *12 (P.T.A.B. Dec. 12, 2024). Everlight's assertion that the discretionary denial of IKEA's petition predicts the eventual outcome of the pending reexamination—which has already been granted—is meritless.

### C. The Court Should Ignore Everlight's Statistical Analysis

Both parties confront the fact that the PTO's statistics do not separately address reexaminations of expired patents. The available data show that, among third-party requests,

16.1% result in cancellation of all claims, 22.9% result in confirmation of all claims, and 61.0% result in claim changes. Everlight criticizes these statistics because they are "certificate-level, not claim-level." (Dkt. 50 at 7.) But neither side possesses the claim-level data Everlight demands. More importantly, Everlight's argument ignores the nature of the asserted claims. Rather than asserting a broad set of distinct independent claims narrowed by myriad narrowing dependent claims, Everlight asserts a single independent claim and two terse dependent claims. A prior-art-based validity challenge necessarily addresses the independent claims first. Thus, although claim-level statistics are unavailable, the "changed" category can reasonably be expected to include changes to independent claims, which are necessarily the broadest claims being challenged. 35 U.S.C. § 112, ¶ 4 (pre-AIA). Moreover, Everlight again suggests that the proper standard is whether a stay would "eliminate" the litigation entirely, rather than whether it would simplify the litigation. (Dkt. 50 at 7.) Because Everlight relies on the wrong standard, its opposition lacks merit.

### D. Seoul's Agreement not to File Additional Challenges Is not "Meaningless"

Everlight asserts that "[n]o one expects SSC to file serial EPRs against the same asserted claims or to seek another stay if a stay is granted here (which makes no sense)." (Dkt. 50 at 7.) If Seoul were to identify additional prior art, however, it could pursue an additional *ex parte* reexamination. Regardless of Everlight's expectations, Seoul's agreement to relinquish that right is significant. Moreover, Everlight's assertion that Seoul's concession regarding an additional stay "makes no sense" (Dkt. 50 at 7) rests on a flawed premise. Seoul is not the only defendant facing patent-infringement allegations under the '126 patent. If Seoul's challenge were to fail but another defendant to file a separate *ex parte* reexamination, Seoul's concession would preclude it from seeking a stay based on that additional proceeding.

### E. Everlight's Allegations of Prejudice Are Meritless

Everlight asserts that Seoul's counterclaims present "precisely the type of 'clear tactical

disadvantage' the prejudice factor guards against." (Dkt. 50 at 8.) The lack of a single case citation to support Everlight's view of the "precise[ ]" purpose of that factor is telling.[1] In this case, Seoul's choice to bring its infringement claims as counterclaims rather than as a separate action should be irrelevant. Everlight is no better or worse off for having to defend against Seoul's claims in this litigation rather than in a separately filed one.

**F. The Early Stage of the Litigation Supports a Stay**

Everlight concedes that this case is in its early stage, which favors a stay. (Dkt. 50 at 10.) Its only response is to again refer to the existence of Seoul's counterclaims. As discussed above, what Everlight suggests is a *per se* rule that a defendant's decision to present its own infringement claims negates the possibility of a stay. Everlight presents no factual, legal, or logical basis for that rule, which the Court should reject.

**G. Everlight's Criticism of Severance Attacks Rule 21 Generally**

As part of its stay motion, Seoul asked the Court to sever its infringement counterclaims from Everlight's affirmative claims. (Dkt. 47 at 12.) Everlight responds that "[s]everance … would not eliminate litigation; it would divide one litigation into two and create the very prospect of duplication that severance is supposed to avoid." (Dkt. 50 at 11 (citing cases).) But dividing a single action into two is precisely what Rule 21 permits. Fed. R. Civ. P. 21; *see also United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983). Indeed, even compulsory counterclaims may be severed. *Id.* Everlight's critique therefore attacks Rule 21 generally rather than its application here. Moreover, neither case Everlight cites addresses severing an alleged infringer's counterclaims

[1] In support of its opposition, Everlight cites *Nidec Corp. v. LG Innotek Co.*, No. 6:07CV108, 2009 WL 3673433 (E.D. Tex. Apr. 3, 2009), for the proposition that stays should not be granted in cases between "direct competitors." (Dkt. 50 at 9.) In that case, however, "Plaintiff ha[d] indicated it will seek a permanent injunction." 2009 WL 3673433, at *4. The prejudice the court found there included that "because the parties are direct competitors in the marketplace; Plaintiff may have the chance to secure a permanent injunction." *Nidec*, 2009 WL 3673433, at *4. No such relief is available to Everlight here, rendering that case irrelevant.

involving different patents and different products. *See Monterey Rsch., LLC v. Renesas Elecs. Corp.*, No. 2:24-CV-00238-JRG, 2025 WL 611046, at *2 (E.D. Tex. Feb. 25, 2025) (discussing the customer-suit exception); *TQ Delta, LLC v. CommScope Holding Co., Inc.*, No. 2:21-CV-00309-JRG, 2022 WL 2872993, at *5 (E.D. Tex. July 21, 2022) (discussing co-pending cases in Texas and Delaware involving overlapping patents and identical products). Thus, although duplication may have been a valid concern in those cases, Everlight identifies no comparable duplication here.

### H. Everlight's Failure to Present an Infringement Theory Is not a "Sideshow"

In its motion, Seoul explained that Everlight's pleaded infringement theory is that the Chevy Trax SUV's headlights include LEDs made using a patented process. (Dkt. 47 at 9.) Everlight now asserts that the "Chevrolet Trax is identified only as an example of a downstream product incorporating an accused WICOP module" and that the vehicle itself is not alleged to infringe. (Dkt. 50 at 13.) Indeed, Everlight calls that disclaimed infringement theory "nonsensical." (*Id.*) But Everlight nowhere explains how § 271(g) imposes direct liability for acts that occur "downstream" from the defendant. Instead, absent that "nonsensical" theory, neither Everlight's complaint nor its preliminary infringement contentions identify a single cognizable act of patent infringement. Everlight nevertheless contends that the Federal Rules should permit it to impose significant burdens on its opponent to investigate ***if*** infringement has occurred. (*Id.* at 12.) That deficiency is not a sideshow, although the Court may address its consequences at a later stage.

## II. CONCLUSION

For the foregoing reasons, Seoul respectfully requests that the Court sever and stay Everlight's patent-infringement claims pending completion of the *ex parte* reexamination of U.S. Patent No. 7,554,126.

Dated: October 13, 2026

/s/ *Michael Eisenberg*
Michael Eisenberg
STEVENS & LEE, P.C.
485 Madison Avenue, 20th Floor
New York, NY 10022
(212) 319-8500
michael.eisenberg@stevenslee.com

Melissa Richards Smith
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450
melissa@gillamsmithlaw.com

Jennifer L Jonak
JONAK LAW GROUP PC - Creswell
85100 Cloverdale Road
Creswell, OR 97426
(541) 525-9102
jenny@jonak.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on October 13, 2026, to all counsel of record via electronic mail.

/s/ *Michael Eisenberg*
Michael Eisenberg